Hogue v. Hogue

---

ROY HARLEY HOGUE, JR. v. PAULINE BLACKBURN HOGUE

No. 7421DC1

(Filed 6 February 1974)

Divorce and Alimony § 18— alimony pendente lite and counsel fees — dependent spouse not in need of means of subsistance — denial proper

Since a dependent spouse is entitled to alimony *pendente lite* only upon a showing that she is entitled to the relief she demands and that she is without means to subsist during the pendency of the action, and defendant's pleadings in this case stated in no uncertain terms that she had subsisted for a number of years without financial assistance of plaintiff, the trial court did not err in denying defendant's motion for counsel fees and alimony *pendente lite* after having found that defendant was the dependent spouse. G.S. 50-16.3.

APPEAL from *Henderson, Judge,* March 1973 Session of FORSYTH County, the General Court of Justice, District Court Division. Argued in the Court of Appeals 15 January 1974.

Plaintiff and defendant were married on 5 March 1950, and they lived together until July 1971, at which time plaintiff allegedly abandoned defendant. They have lived apart continuously since that time. On 20 October 1972, plaintiff filed his complaint seeking absolute divorce. Defendant answered that plaintiff wrongfully abandoned her; and by way of cross action and counterclaim, she made multiple allegations concerning her mistreatment at the hands of plaintiff. The allegations material to the case on appeal are as follows:

"The plaintiff wilfully and wrongfully abandoned defendant on or about the first of July 1971 and both before and since said time has wilfully and wrongfully failed and refused to provide adequate support for her in accordance with his means, and since he left home at said time he has refused to pay even the monthly payments on the deed of trust against the homeplace, to which the deed of conveyance therefor is made out to both of them at his insistence, amounting to $134.40 per month, forcing this defendant to make said payments since then to avoid a foreclosure; and this defendant has further been forced to pay the taxes thereon, fire insurance, upkeep and repairs, and all other expenses in connection with the home."

4. (a) "Plaintiff . . . insisted on defendant's selling her home before their marriage for about $10,000 and buying another home to be put in both names, in which defendant put up the cash, including $10,000 from sale of her old home, $7,000 she inherited from her father's estate, $4,000 she borrowed from her sister and which she paid back, and the plaintiff promised to help pay for this home but never did pay anything except the monthly payments on the mortgage until he left, and refused to support his wife and child except for a very few groceries now and then; defendant bought most everything in and around the house with her own money, and since he left defendant has had to pay everything, including payments on the mortgage on the house, taxes, insurance, repairs, etc."

4. (b) (16) "On a Friday night the plaintiff became mad about something or somebody and jumped on defendant and knocked one tooth out and loosened three others which had to be pulled when defendant got to a dentist on Monday thereafter, causing three days of serious pain and suffering.

It cost $300 but plaintiff would not pay it and the defendant had to pay the bill."

4. (b) (18) "One night in 1968 their daughter, Connie, was working at Food Fair after going to school at Mount Tabor High School. Defendant was scared to death to be in the house with plaintiff when Connie was not there. On this night plaintiff had been cursing defendant for a couple of hours. Defendant had been running from the kitchen to the den to keep plaintiff from beating her. Defendant dodged him, and when he could not get to her with his fists he started in on the furniture. . . . The damage was estimated to be over $2,000. . . . Plaintiff did not mention or offer to pay for the furniture destroyed. . . . "

(19) " . . . Defendant had to pay a bad check he had given the YMCA before he left. Plaintiff had just wrecked another Ford car. Defendant paid the last three payments on the Ford in order to buy and replace another."

5. " . . . Plaintiff warned defendant that he would kill her before he would pay her any support, and he finally brought this suit hoping to get half the value of the home that defendant had paid for except some monthly payments he made on the mortgage. But he paid nothing of any consequence on running the house, groceries, insurance, taxes, repairs, shrubbery for the yard, etc.

6. Defendant's first husband had been killed in an accident when they had been married only ten weeks. Defendant went to work and worked seven years on two jobs most of the time and bought and paid for her home. Defendant married plaintiff when he had no job but he promised to get a job and begin work. He became unhappy with their home in her name and wanted her to sell it and buy or build another, with his name on the deed. At his pressing insistence defendant finally sold her home for $10,000 and built their present home at a cost of $30,000, besides all improvements and expenses since then. Defendant put the $10,000 in the new house and about $7,000 she got from her father's estate when he died. She had paid for some lots and she sold them to help pay expenses. Defendant always paid the taxes, insurance, repairs and upkeep on the house. He paid nothing except $134.40 per month on the loan against the new house, and when he abandoned her in July 1971 he

stopped paying the monthly payments on the mortgage and has paid nothing to defendant since that time. He makes about twice as much as she does and is able to pay his part. Defendant has paid out about $40,000 on the home and expenses in running it.

Defendant borrowed $4,000 in addition to the mortgage loan from her sister to apply on the cost of the house—and defendant paid every cent of it back. She has paid her doctor bills all this time, when most, if not all, were due to his cruelty and mistreatment. This suit for divorce was brought by him in bad faith, principally in an effort to collect one-half the value of the homeplace in which he has very little financially. There is still a balance due on the mortgage of $7,700 or more, the payments on which she has had to make to keep the home from being sold under the mortgage. Defendant also had to pay for their daughter's schooling, including one year at college."

9. "Plaintiff since said time—July 1971—has not paid anything whatever for her support and maintenance and continues to live in a trailer, including nonpayment of the monthly payments due under the deed of trust on the home, to which the deed of conveyance is made to both of them."

10. "Plaintiff earns about $10,000 or more per year and is strong and healthy, and has the means and is able to pay a reasonable sum for defendant's support and the payments on the mortgage on the home, as well as the taxes, insurance, etc., and the defendant does not earn enough to pay same, is without sufficient means to cope with plaintiff in presenting her case before the court, and an injustice will be done unless plaintiff is directed to pay her a reasonable allowance for her support and for payments due on the mortgage on the home, and for her attorney's fee, and she is a dependent spouse."

The remaining allegations in the answer are related to various acts of physical abuse and terrorism by plaintiff toward defendant and have no relation to the contention of defendant on appeal.

Plaintiff in his reply denied all the foregoing allegations. Defendant moved that the court award her support and counsel fees pendente lite. In denying the motion, the court made, *inter alia,* the following findings of fact:

Hogue v. Hogue

" . . . that the defendant, Pauline Blackburn Hogue, is employed at R. J. Reynolds Tobacco Company and has been so employed for some 20 years or more; that in the year 1972 the defendant had a gross income of $5,441.81 and a net income of $4,054.00, and that she is presently earning approximately the same amount or more; that the plaintiff and defendant own a home as tenants by the entirety; . . . that the plaintiff, Roy Harley Hogue, Jr., filed for an absolute divorce on October 20, 1972, and that until said divorce was filed the defendant had not made any demands upon the plaintiff for support or subsistence; that thereafter, the defendant, Pauline Blackburn Hogue, filed answer to said divorce action and a cross action for alimony pendente lite and permanent alimony;

And it further appearing to the Court and the Court finds, from the evidence of the defendant, Pauline Blackburn Hogue, on her cross action, that she had made the payments on the homeplace of the parties since the separation and that she has been able to pay her debts incurred by herself for her support and the upkeep of the home and the payments on the home without assistance from the plaintiff or by other means;

\*       \*       \*

And it further appearing to the Court and the Court finds that the plaintiff is employed at R. J. Reynolds Tobacco Company and has an earning, after deductions, of approximately $600.00 per month; that he has expenses in excess of $500.00 per month;

And it further appearing to the Court and the Court finds that the plaintiff, Roy Harley Hogue, Jr., is the supporting spouse and the defendant, Pauline Blackburn Hogue, is the dependent spouse;

And it further appearing to the Court and the Court finds that the defendant, Pauline Blackburn Hogue, is not substantially in need of financial assistance from the plaintiff, Roy Harley Hogue, Jr., during the pendency of this action until said issues can be determined by a jury;".

From the order of the trial court denying support and counsel fees pendente lite, defendant appeals.

*Wilson and Morrow, by Harold R. Wilson and John F. Morrow, for plaintiff appellee.*

*Deal, Hutchins and Minor, by Fred S. Hutchins, Sr., for defendant appellant.*

MORRIS, Judge.

Defendant's sole assignment of error is to the trial court's denial and continuance of the motion for alimony and counsel fees pendente lite after having found that the defendant was the dependent spouse and the plaintiff was the supporting spouse. We hold that the motion was properly denied.

G.S. 50-16.3 provides in pertinent part:

"(a) A dependent spouse who is a party to an action for absolute divorce, divorce from bed and board, annulment, or alimony without divorce, shall be entitled to an order for alimony pendente lite when:

(1) It shall appear from all the evidence presented pursuant to G.S. 50-16.8(f), that such spouse is entitled to the relief demanded by such spouse in the action in which the application for alimony pendente lite is made, and

(2) It shall appear that the dependent spouse has not sufficient means whereon to subsist during the prosecution or defense of the suit and to defray the necessary expenses thereof."

It is clear from the face of this statute that in order for defendant to be awarded alimony pendente lite, it must appear that she is the dependent spouse, that she is entitled to the relief she demands *and* that she is without means to subsist during the pendency of this action. *Rickert v. Rickert*, 282 N.C. 373, 193 S.E. 2d 79 (1972). The two subdivisions of section (a) are conjunctive; thus, the grounds stated in both subdivisions must be found to exist before alimony pendente lite may be awarded. *Presson v. Presson*, 13 N.C. App. 81, 185 S.E. 2d 17 (1971).

· It is not necessary that we consider the questions of the defendant's dependency or whether she is entitled to relief. Her pleadings have stated in no uncertain terms that she has subsisted for a number of years without financial assistance of plaintiff. Defendant has failed to allege facts sufficient to show

pursuant to G.S. 50-16.3(a)(2) that she has not sufficient means to subsist during the pendency of the action and to defray the necessary expenses thereof. The order denying support and counsel fees pendente lite will not be disturbed.

No error.

Chief Judge BROCK and Judge CARSON concur.