JEANETTE FINNEGAN ROSS v. GEORGE JAY ROSS

No. 761DC888

(Filed 15 June 1977)

1. **Rules of Civil Procedure § 12— motion for more definite statement — discretion of court**

The allowance or denial of a motion for a more definite statement rests in the sound discretion of the trial judge, and his ruling thereon will not be overturned on appeal absent a showing of abuse of discretion.

2. **Rules of Civil Procedure § 12— motion for more definite statement — when denied**

So long as a pleading meets the requirements of G.S. 1A-1, Rule 8, and fairly notifies the opposing party of the nature of the claim, a motion for a more definite statement will not be granted.

3. **Divorce and Alimony § 18.3— alimony pendente lite — sufficiency of complaint**

Plaintiff's complaint seeking alimony *pendente lite* was sufficient to comply with the notice requirements of G.S. 1A-1, Rule 8, where it alleged that defendant assaulted and beat her, threatened her physically, appropriated her personal assets, forced her to abandon the home on a specified date, and has since failed to provide for her; therefore, defendant's motion for a more definite statement was properly denied.

4. **Divorce and Alimony § 18.9— alimony pendente lite — dependent spouse — means to subsist — insufficient evidence**

Plaintiff failed to introduce evidence from which the court could properly conclude that she was the dependent spouse and was without sufficient means to subsist during the pendency of the action and the court erred in awarding plaintiff alimony *pendente lite,* where plaintiff's evidence as to her financial condition tended to show that she is presently employed as a sales clerk and earns $72.00 per week; that she lives in a furnished apartment owned by her mother and pays no rent; and that she has a car payment of $122.00.

APPEAL by defendant from *Chaffin, Judge.* Order entered 6 July 1976 in District Court, DARE County. Heard in the Court of Appeals 10 May 1977.

On 4 June 1976, plaintiff instituted this action against defendant seeking alimony pendente lite, divorce from bed and board, a writ of possession of the family business, and attorney fees. Defendant moved (1) to dismiss the complaint for failure to state a claim upon which relief could be granted and (2) for a more definite statement. A hearing was held, and

defendant's motion for a more definite statement was denied. Plaintiff then proceeded to introduce evidence as to her claim of alimony pendente lite. Defendant offered no evidence. Judge Chaffin entered an order which found facts and provided as follows:

"1. That the plaintiff, Jeanette Finnegan Ross, and the defendant were married on December 18, 1970; that she is a resident of Buxton, North Carolina, and that defendant is also a resident of Buxton, North Carolina, having lived there since 1973.

That the plaintiff owns jointly with the defendant a business in Buxton known as 'Jiminy Cricket's Sub Shop' on property leased by them as husband and wife from Junior Ray Rood and Mary Alethia Rood. That the business was financed by funds arranged by her, to wit: In November, 1972, $2,000.00 borrowed by the plaintiff through her mother, Janet G. Finnegan, from Virginia National Bank and used to pay existing family debts of both plaintiff and defendant in order to clear their credit for the forthcoming business venture; in January, 1973, $2,500.00 borrowed from her school teacher credit union (Princess Ann-Virginia Beach Credit Union), the funds to be applied to the building contractor renovating the existing building under general building plans drawn by the drafting instructor at her high school. This note was also signed by plaintiff's mother, Janet G. Finnegan, as the defendant was unemployed at the time; in February, 1974, $2,000.00 withdrawn by plaintiff from her school teacher retirement fund; and $10,000.00 borrowed from Miss Helen Muriel Travis. All these funds were used to purchase restaurant equipment, stock, and to renovate the existing building on the leased premises, or otherwise arrange for the opening of the business known as 'Jiminy Cricket's Sub Shop.' That defendant did not contribute any money toward the business, and plaintiff has never been repaid any of the money advanced by her.

That the plaintiff learned the sub shop business in March, 1972 by working part-time in the Zero Sub Shop, Little Sicily's Restaurant, and Jimmy's Pizza House, all restaurants in Virginia Beach, and thereafter she instructed defendant concerning the operation of Jiminy Cricket's Sub

Shop. Plaintiff said the business was started in June, 1973, and that she worked in the business during the summer of 1973 and 1974.

And that during this time she lived with defendant as husband and wife in the downstairs apartment of a house rent free which was owned by her mother in Buxton; that plaintiff's brother, Michael Finnegan, lived in the upstairs apartment.

That domestic difficulties with defendant first began during the winter of 1972 while the parties were living in Virginia Beach, Virginia, when defendant in a violent rage assaulted and beat her, that he threw her through the opening between the kitchen and living room of their home, knocked her down and beat her on the back with his fist; that this assault occurred during an argument over defendant quitting his job as a salesman with Eastern Auto Company in order to be free during the hunting season and that each time defendant quit his job he remained unemployed for 3-4 months during which time plaintiff supported the family from her school teacher's salary.

That on another occasion during the winter of 1972, also in Virginia Beach, defendant again assaulted her by 'banging' her against the wall in the hallway of their home and on this occasion defendant had his hands around her throat with his thumbs pressed under her chin; that she weighed 108 pounds and was 5 feet 3 inches tall, that defendant weighed 240 pounds and was 6 feet 7 inches tall; and that defendant had a violent and uncontrollable temper.

That defendant continued to abuse and assault her, both physically and by abusive language, after they moved to Buxton and opened 'Jiminy Cricket's Sub Shop'; that during the summer of 1973 while in a fit of temper the defendant pushed her against a door of their apartment and injured her back; that at Christmastime in 1973 while visiting his parents in Edenton, N. C. the defendant in a fit of temper kicked her from their bed in his parents' home and forced her to sleep on the floor. She said the defendant cursed her frequently calling her a 'whore,' 'slut,' and a 'bitch,' and that she was 'ugly' and 'old'; and that defendant committed these verbal abuses against her both in their apartment and in the presence of others in Jiminy

Cricket's Sub Shop. That in the spring of 1975 defendant again assaulted her by kicking her while in a theatre in Military Circle Mall. That on occasions these assaults left bruises on the upper part of her arms. That defendant threatened to break the legs of her brother Michael Finnegan, if she exposed him for mistreating her, and also to have her father and her uncle 'taken care of.' That the defendant continued to abuse her in this manner and forced her to leave their home and business on May 22, 1975.

That defendant promised to pay her for her support and maintenance in the way of alimony the sum of $100.00 each week during those months Jiminy Cricket's Sub Shop was open and $200.00 each month when the business was not open and that he also promised to make payments of $122.00 per month on the 1974 Cutlass Oldsmobile owned by plaintiff.

That defendant made payments of $100.00 per week to her from June 1, 1975 through September 1975, and that he has failed and refused to make further payments for maintenance and support since that date, except $60.00 in December, 1975, even though she had requested money from the defendant for her maintenance and support because she was unable to work because of her poor health. She further testified that defendant had secretly attempted to have her automobile repossessed.

That the plaintiff had signed a contract to teach school during the 1976 school year, but was forced to resign after teaching only one month because of her poor health and ulcers; that since that time she had worked only part-time as a substitute teacher and had also worked in a restaurant. That at present she was working as a sales clerk in a gift shop in Buxton earning $2.00 per hour for 36 hours each week. Plaintiff said she last requested financial assistance from defendant at Christmastime in 1975 and that he gave her $60.00; that at that time she had no money and was without a job. Plaintiff testified that she knew the business during the season had a net weekly income of approximately $700.00 per week, which profit the defendant was keeping for himself and that the defendant had refused to give her an accounting.

That defendant had refused to permit her to return to work in Jiminy Cricket's Sub Shop.

2. Michael Finnegan testified that he is the brother of the plaintiff and that he occupied the upstairs apartment of his mother's house in Buxton when plaintiff and defendant lived in the downstairs apartment; that he knew that the plaintiff and defendant occupied the downstairs apartment and knew their voices; he testified that he had heard the defendant call plaintiff a 'whore,' 'slut' and 'bitch' and that he had seen bruises on the upper part of her arms. He further testified that he had worked at Jiminy Cricket's Sub Shop more than one year after the business opened and he had seen the defendant drive plaintiff from the business shouting to her to 'get out.' He further testified defendant had a violent temper and on one occasion that defendant had physically attacked her.

3. Charles Lloyd Gray testified that he is a resident of Buxton and is employed by Cape Hatteras Electric Supply Company in charge of sales and service of air conditioning and refrigeration equipment. That he has known the defendant since 1973 and knows that he has a violent temper; that he has witnessed violent displays of temper by defendant at employees of Jiminy Cricket's Sub Shop and that during the summer of 1973 heard defendant curse the plaintiff in Jiminy Cricket's Sub Shop, call her a 'bitch' and order her to 'get out' of the shop. That during the summer of 1974 he heard defendant again curse plaintiff and call her a 'bitch,' and this occurred during an argument in the apartment occupied by plaintiff and defendant and the witness did not know what the argument was about. That during the fall of 1974 he witnessed another display of violent temper by defendant concerning the repossession of house furniture loaned to plaintiff and defendant by the father of the witness and that on this occasion defendant cursed both the witness and the father of the witness. That as recently as three weeks ago he heard defendant curse one of the employees of Jiminy Cricket's Sub Shop.

4. Helen Muriel Travis testified that she is a resident of Virginia Beach and that she had loaned $10,000.00 towards the establishment of Jiminy Cricket's Sub Shop. That she had loaned the money because of her interest in the plain-

tiff and Michael Finnegan and that plaintiff and defendant had signed the promissory note.

5. Janet G. Finnegan testified that she is a resident of Virginia Beach and mother of the plaintiff; that she had personal knowledge concerning the financing of Jiminy Cricket's Sub Shop and that the source of the funds testified by plaintiff was true.

6. That the defendant did not testify or offer any evidence.

7. That upon the aforegoing facts, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:

A. That the plaintiff is the dependent spouse within the meaning of NCGS 50-16.1(3), who is actually substantially dependent upon the defendant for her maintenance and support or is substantially in need of maintenance and support from the defendant and the defendant is the supporting spouse within the meaning of NCGS 50-16.1(4).

B. That during the marriage, the plaintiff has been a faithful and dutiful wife of the defendant and contributed of her time, energy and earnings to the defendant.

C. That the marital difficulties between the parties for the reasons hereinafter alleged were without fault or provocation on the part of the plaintiff.

D. That the plaintiff, as the dependent spouse, is entitled to alimony and other relief, due to the actions and conduct of the defendant to the plaintiff, which actions were without fault of provocation on the part of the plaintiff in that prior to the institution of this action, the defendant, by cruel and barbarous treatment, has endangered the life of the plaintiff; the defendant has offered such indignities to the person of the plaintiff as to render her condition intolerable and life burdensome; the defendant has wilfully failed to provide the plaintiff with necessary subsistence according to his means and conditions so as to render the condition of the plaintiff intolerable and life of the plaintiff burdensome and the defendant is guilty of abandonment of the plaintiff.

E. That the defendant is an able-bodied man, in good health and physical condition, earning or capable of earning a substantial income.

F. That the defendant is a large man and that the plaintiff is a small woman and the defendant on occasions is a man of violent temper and by his actions and conduct has placed the plaintiff in fear of her welfare, health and safety.

G. That the plaintiff, as the dependent spouse, is without funds or sufficient means to subsist during the prosecution of this action or to pay counsel fees in the prosecution of her action.

H. That the defendant is capable of making the alimony pendente lite payments as required.

I. That the plaintiff is entitled to the relief requested on the grounds alleged in the complaint and the evidence offered appears to be sufficient to entitle the plaintiff to the relief sought and the plaintiff was and is in substantial need of alimony pendente lite for her support and maintenance from the defendant.

J. That the plaintiff does not have sufficient means to support and maintain herself pending the trial of this action or to pay attorneys fees to prosecute said action on her behalf.

K. That the plaintiff, as the dependent spouse, has not sufficient means whereupon to subsist during the prosecution of the suit and to defray the necessary expenses thereof.

L. That the dependent spouse is entitled to the relief demanded in the action in which the application pendente lite is made.

M. That the writ of possession prayed for in the complaint does not apply under the existing facts and circumstances and applicable law.

Based on the aforegoing Facts and Conclusions of Law, IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED:

1. That the defendant pay to the plaintiff in the way of alimony pendente lite the sum of $100.00 per week through the Office of the Clerk of Superior Court, commencing on

Friday, July 9, 1976 pending the trial of this case on its merits or until further orders of the Court;

2. That the defendant pay to the plaintiff's attorneys, Russell E. Twiford and Wallace R. Gray, a reasonable attorneys' fee in the sum of $350.00 for professional services rendered to date, said amount to be paid through the Office of the Clerk of Superior Court, within 30 days from date and costs of this action to be taxed by the Court;

4. That this matter be subject to further orders of the Court pending trial of this case on its merits."

Defendant appeals from this order. Other relevant facts are set out in the opinion below.

*Twiford, Seawell, Trimpi and Thompson, by Russell E. Twiford and Wallace R. Gray, for plaintiff appellee.*

*LeRoy, Wells, Shaw, Hornthal, Riley and Shearin, P.A., by Roy A. Archbell, Jr., for defendant appellant.*

MORRIS, Judge.

[1] By his initial assignment of error, defendant contends that the trial judge erred in denying his motion for a more definite statement. Of course, the grant or denial of a motion for a more definite statement rests in the sound discretion of the trial judge, *Mitchell v. E-Z Way Towers, Inc.*, 269 F. 2d 126 (5th Cir. 1959), and his ruling thereon will not be overturned on appeal absent a showing of abuse of discretion.

[2] Rule 12(e) provides that a motion for a more definite statement is proper only when ". . . a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . ." The motion is the most purely dilatory of all the motions available under the Rules of Civil Procedure. Myers & Humphreys, Pleadings & Motions, 5 Wake Forest Intra. L. Rev. 78 (1969). It is not favored by the courts and is sparingly granted because pleadings may be brief and lacking in factual detail, and because of the extensive discovery devices available to the movant. Shuford, N. C. Civil Practice & Procedure, § 12-14, p. 111 (1975). So long as the pleading meets the requirements of Rule 8 and fairly notifies the opposing party of the nature of the claim, a motion for a more definite statement

will not be granted. 1A Baron & Holtzoff, Federal Practice & Procedure, § 362, p. 413 (1960) ; 2A Moore's Federal Practice, § 12.18, p. 2389 (1975), and cases cited therein.

[3] Defendant argues that the complaint failed adequately to notify him of the "transactions, occurrences, or series of transactions or occurrences intended to be proved" as required by Rule 8(a) (1), North Carolina Rules of Civil Procedure. We cannot agree. The complaint alleged in pertinent part:

> "VII. That during their marriage, without fault or provocation on the part of the plaintiff, the defendant offered such indignities to the person of the plaintiff, the dependent spouse, as to render her condition intolerable and life burdensome; that the defendant, by cruel and barbarous treatment endangered the life of the plaintiff; that the defendant abandoned the plaintiff by abusive treatment; assaulted and beat the plaintiff; cursed and used vulgar language toward the plaintiff; threatened her physical safety; took her personal assets and maliciously turned the plaintiff out of doors or forced her to abandon their home on May 22, 1975.
>
> VIII. That the defendant is a large man, possesses a violent temper and when aroused has assaulted and struck the plaintiff, as a result of which the plaintiff is in fear of her safety and well-being.
>
> IX. That the defendant is an able-bodied man, in good health and physical condition and capable of earning a substantial income, 31 years of age, and since May 22, 1975 has wilfully failed to provide for the plaintiff with necessary subsistence according to his means and conditions so as to render the condition of the plaintiff intolerable and life of the plaintiff burdensome. That the defendant is guilty of constructive abandonment of the plaintiff."

The case of *Manning v. Manning*, 20 N.C. App. 149, 201 S.E. 2d 46 (1973), upon which defendant relies, involved a complaint which is clearly distinguishable from the one in the present case. In *Manning*, the plaintiff wife's complaint employed the exact language of G.S. 50-16.2 and alleged only that the defendant husband treated her cruelly and offered indigni-

ties to her person. This Court held the pleading to be insufficient, stating that

> ". . . [the complaint] does not mention any specific act of cruelty or indignity committed by the defendant. It does not even indicate in what way defendant was cruel to plaintiff or offered her indignities. For all the complaint shows, the alleged cruelty and alleged indignities may consist of nothing more than occasional nagging of the plaintiff or pounding on a table. Such a complaint does not give defendant fair notice of plaintiff's claim. It is merely an 'assertion of a grievance,' (North Carolina Rules of Civil Procedure, Rule 8, Comment (a)(3)), and it does not comply with Rule 8(a)." *Id.* at 155, 201 S.E. 2d at 50.

In the present case, however, plaintiff alleged that defendant assaulted and beat her; that he cursed and used vulgar language toward her; that he threatened her physically; that he appropriated her personal assets; and that he forced her to abandon the home on 22 May 1975 and has since failed to provide for her. We believe, and so hold, that plaintiff's allegations were sufficient to comply with the notice requirements of Rule 8. *E.g., Brewer v. Harris,* 279 N.C. 288, 182 S.E. 2d 345 (1971); *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970); *Roberts v. Whitley,* 17 N.C. App. 554, 195 S.E. 2d 62 (1973). Defendant's remedy for any additional facts consisted of the utilization of discovery and was not a Rule 12(e) motion for a more definite statement. This assignment is overruled.

[4] Defendant's sixth assignment of error relates to the trial judge's conclusions of law. He particularly objects to Conclusion "A" in which the judge found that plaintiff was the dependent spouse within G.S. 50-16.1(3) and that defendant was the supporting spouse within G.S. 50-16.1(4). Defendant contends that the evidence was insufficient to support this conclusion and the subsequent conclusions based thereon. We are constrained to agree.

G.S. 50-16.3 provides that in order to obtain alimony pendente lite, the applicant must be (1) a dependent spouse, (2) entitled to the relief demanded in the action, and (3) without sufficient means whereon to subsist during the prosecution or defense of the suit and to defray the necessary expenses thereof. *Hogue v. Hogue,* 20 N.C. App. 583, 202 S.E. 2d 327 (1974). The facts required by the statutes must be alleged and

proved before the order of alimony pendente lite is properly entered. *Guy v. Guy,* 27 N.C. App. 343, 219 S.E. 2d 291 (1975).

Plaintiff's evidence as to her financial condition tended to show that she is presently employed as a sales clerk in a gift shop and earns approximately $72 per week; that she lives in a furnished apartment owned by her mother and pays no rent; and that she has a car payment of $122.

Assuming, *arguendo,* that plaintiff has established that she is entitled to a divorce *a mensa et thoro,* she failed to introduce evidence from which the judge could conclude, as he did, that she was the dependent spouse and was without sufficient means to subsist during the pendency of the action and defray its expenses. In *Cabe v. Cabe,* 20 N.C. App. 273, 201 S.E. 2d 203 (1973), this Court held that the mere showing of some of the wife's expenses does not necessarily establish that she is a dependent spouse. Brock, C.J., writing for the Court, stated:

> "It seems obvious that she has other monthly expenses but the court is not permitted to speculate, as to the amount. The courts are not blind to the fact that day to day living is expensive, but each person's situation is different. Each case presents different circumstances and the burden is upon the applicant for alimony, or alimony pendente lite, to offer evidence to establish the need in each case." 20 N.C. App. at 275, 201 S.E. 2d at 204-05.

Because plaintiff failed to carry her burden in the present case, it was error for the trial judge to enter an award for alimony pendente lite. Consequently, it was likewise error to make an award of counsel fees. *Newsome v. Newsome,* 22 N.C. App. 651, 207 S.E. 2d 355 (1974) ; *Manning v. Manning, supra.*

In view of our ruling, we do not reach defendant's other assignment of error.

Reversed and remanded.

Judges HEDRICK and ARNOLD concur.