LS Mtron v. Escorts, Ltd., 2012 NCBC 18.

STATE OF NORTH CAROLINA

COUNTY OF EDGECOMBE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 1539

LS MTRON, as successor to LS CABLE,      )
                              Plaintiff       )
                                             )
              v.                             )
                                             )
ESCORTS, LTD., directly and as successor   )
By merger to ESCORTS AGRIMACHINERY,   )
INC., TEXTRON FINANCIAL CORP. and       )
JAMES C. MARROW, Receiver for            )
FARMTRAC NORTH AMERICA, LLC,            )
                           Defendants        )

**OPINION AND ORDER ON
MOTIONS TO DISMISS**

        THIS CAUSE, designated a mandatory complex business case by Order of the

Chief Justice of the Supreme Court of North Carolina, pursuant to N.C. Gen. Stat. § 7A-

45.4 (hereinafter, references to the North Carolina General Statutes will be to "G.S."),

and assigned to the undersigned Chief Special Superior Court Judge for Complex

Business Cases, comes before the court upon (a) Motion of Textron Financial

Corporation to Dismiss (the "Textron Motion") and (b) Motion of Escorts, Ltd. to Dismiss

Plaintiff's Complaint (the "Escorts Motion") (collectively, the "Motions"); and

        THE COURT, after considering the Motions, arguments in support of and in

opposition to the Motions, briefs in support of and in opposition to the Textron Motion,

brief in opposition to the Escorts Motion[1] and other appropriate matters of record,

---

[1] The Escorts Motion was filed without an accompanying brief.  This practice is inconsistent with Rule
15.2 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"),
which requires that "[a]ll motions, unless made orally during a hearing or trial, shall be accompanied by a
brief . . .," notwithstanding certain limited exceptions.  While the Escorts Motion could be denied
summarily pursuant to BCR 15.11, the court, in the exercise of its discretion, decides to consider the
Escorts Motion on its merits.

CONCLUDES that the Textron Motion should be GRANTED in part and DENIED in part, and the Escorts Motion should be DENIED, for the reasons stated herein.

*Wyrick Robbins Yates & Ponton LLP, by Benjamin N. Thompson, Esq. and Sarah M. Johnson, Esq. for Plaintiff LS Mtron, Ltd.*

*Poyner & Spruill LLP, by David Dreifus, Esq. and Andrew H. Erteschik, Esq. for Defendant Textron Financial Corporation.*

*Parker Hudson Rainer & Dobbs LLP, by Eric Anderson, Esq. and Ronald T. Coleman, Jr., Esq. for Defendant Textron Financial Corporation.*

*Smith Moore Leatherwood LLP, by Bradley Risinger, Esq. for Defendant Escorts, Ltd.*

*Wilson & Ratledge, PLLC, by N. Hunter Wyche, Jr., Esq. and Michael A. Ostrander, Esq. for Defendant Escorts, Ltd.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]     On December 15, 2009, Plaintiff LS Mtron ("Mtron") filed its Complaint in this civil action. The Complaint alleges three (3) claims for relief ("Claim(s)"): (a) First Claim for Relief – Subordination Due To Breaches of Fiduciary Duty and Inequitable Conduct, (b) Second Claim for Relief – Civil Conspiracy and (c) Third Claim for Relief – Fraudulent Conveyances.

[2]     On February 15, 2010, Defendant Textron Financial Corporation ("Textron") filed the Textron Motion, which seeks dismissal of all Claims, pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

[3]     On May 13, 2010, Escorts Ltd. ("Escorts") filed the Escorts Motion, which seeks dismissal of all Claims, pursuant to Rule 12(b)(1); in the alternative, Escorts requests the court to compel Mtron to prepare a more definite statement of its Complaint, pursuant to Rule 12(e).

## FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[4]     Mtron, formerly a division of LS Cable Ltd., is a tractor manufacturer organized under the laws of the Republic of Korea, with its principal place of business in or near Seoul, Republic of Korea.[2]

[5]     Escorts is an international industrial company based in India, which, among other things, manufactures tractors and agricultural equipment.[3]

[6]     Textron is a corporation organized under the laws of Delaware, with its principal place of business in Providence, Rhode Island.[4]

[7]     Defendant James C. Marrow (the "Receiver") is the receiver for Farmtrac North America, LLC ("Farmtrac").[5] Farmtrac is a limited liability company organized under the laws of Delaware, and prior to the appointment of the Receiver, Farmtrac had its principal place of business in Tarboro, North Carolina.[6]

[8]     At times material, Escorts controlled and dominated Farmtrac through direct and indirect ownership.[7] Escorts sold tractors and related equipment to Farmtrac for further sale by Farmtrac to agricultural equipment dealers throughout the United States.[8]

---

[2] Compl. ¶ 11.
[3] Id. ¶ 1.
[4] Id. ¶ 14.
[5] Id. ¶ 12.
[6] Id.
[7] Id. ¶ 2-3.
[8] Id. ¶ 2.

[9]     A business relationship between Mtron and Farmtrac developed in or about 1998, when Mtron began supplying tractors and related equipment to Farmtrac on credit, pursuant to a distribution agreement.[9]

[10]    Textron financed Farmtrac operations through a revolving credit facility and through floorplan financing to Farmtrac's dealers.[10]  The floorplan financing, which resembles a purchase money loan, financed dealer purchases of Farmtrac's inventory by advancing money directly to Farmtrac upon each equipment purchase by a dealer.[11]

[11]    On May 11, 2005, Farmtrac and Mtron entered into a Distributorship Agreement (the "Distributorship Agreement"), pursuant to which Mtron continued to sell tractors and other related equipment to Farmtrac on an extension of trade credit.[12]

[12]    In 2005, Escorts and Farmtrac were experiencing serious financial difficulties.[13]  Escorts and Farmtrac adopted a practice of "channel stuffing" in an effort to (a) obtain funds through the financing of equipment purchases by Farmtrac and (b) wrongfully transfer those borrowed funds to Escorts for its benefit and that of its subsidiaries.[14]  The alleged "channel stuffing" scheme was designed to "stuff" Farmtrac's "inventory channel to allow excessive purchases of equipment from Escorts." The scheme was carried out by: (a) Farmtrac creating false orders and invoices by its dealers for tractors; (b) Farmtrac submitting the false invoices to Textron, purportedly representing sales by Farmtrac to its dealers, which resulted in Textron increasing the credit base under its floor plan and revolving credit facilities with Farmtrac; (c) Textron

---

[9] *Id.* ¶ 28.
[10] *Id.* ¶ 4.
[11] *Id.*
[12] *Id.* ¶¶ 40-41.
[13] *Id.* ¶ 47.
[14] *Id.* ¶¶ 6, 48.

advancing funds to Farmtrac under the revolving credit facility and the floor plan facility and (d) Farmtrac transferring the proceeds of the Textron loans to Escorts for its benefit.[15]

[13]    The alleged "channel stuffing" scheme also led Mtron to perform under the Distributorship Agreement by supplying millions of dollars worth of tractors and related equipment to Farmtrac and increasing the amount of goods to be supplied by Mtron to Farmtrac on credit.[16]  During late 2006 and 2007, the unpaid amounts due Mtron from Farmtrac increased materially.[17]

[14]    As the amount of goods allegedly purchased by Farmtrac from Escorts and Mtron grew, and the corresponding debt increased, Textron knew or should have known that the "channel stuffing" scheme existed, and it should have disclosed or stopped the scheme.[18]  Rather, Textron allowed the fraudulent practices by Escorts and Farmtrac to continue by increasing the amount of secured credit it extended to Farmtrac.  By doing so, Textron maximized the benefits of the scheme to itself, to the knowing detriment of Mtron.[19]

[15]    On September 30, 2006, Farmtrac owed Mtron approximately $1,626,960.[20]  On November 25, 2007, Farmtrac had an account balance due to Mtron of approximately $11,096,880, of which more than $8 million was past due.  By February 27, 2008, the unpaid amount due Mtron from Farmtrac was approximately $12,349,610.88.[21]

---

[15] *Id.* ¶ 6.
[16] *Id.* ¶ 60.
[17] *Id.*
[18] *Id.* ¶¶ 9, 51-52, 59-60.
[19] *Id.*
[20] *Id.* ¶¶ 58, 60.
[21] *Id.* ¶ 60.

[16]     On or around March 2007, Escorts executed a Guarantee Agreement (the "Guarantee Agreement"), pursuant to which Escorts guaranteed payment on certain Farmtrac payment obligations to Mtron under the Distributorship Agreement.[22]

[17]     On November 27, 2007, Mtron made a formal demand for payment from Escorts under both the Guarantee Agreement and Distributorship Agreement.[23]  When Escorts failed to pay upon demand, Mtron commenced an arbitration proceeding against Escorts and Farmtrac, pursuant to the Distributorship Agreement, with the International Chamber of Commerce on November 29, 2007.[24]

[18]     On November 30, 2007, Mtron also filed a complaint in an action entitled *LS Cable Ltd. v. Farmtrac North America, LLC* (Edgecombe County Sup. Ct. 07-CVS-1345) (the "Receivership Case") seeking, among other things, the appointment of a receiver for Farmtrac.[25]  The court entered an order on February 27, 2008 (the "Receivership Order"), appointing James C. Marrow as the receiver for Farmtrac and authorizing the receiver to liquidate the receivership estate.[26]

[19]     Subsequently, Textron filed a proof of claim against Farmtrac in the Receivership Case for approximately $15,500,000, representing the balance of the indebtedness owed under the revolving credit facility, which was secured by a lien on substantially all of Farmtrac's assets.[27]  On or about November 21, 2008, the Receiver filed a motion with the court in the Receivership Case to allow the secured claim of Textron.[28]  On December 1, 2008, Mtron filed an objection to the allowance of Textron's

---

[22] *Id.* ¶ 42.
[23] *Id.*, Ex. 2. ¶ 10.
[24] *Id.* ¶ 15.
[25] *Id.* Ex. 2. ¶ 12.
[26] *Id.* ¶ 12.
[27] *Id.* Ex. 5.
[28] *Id.* ¶ 17.

secured claim. On March 2, 2009, the court entered an Order Approving Distribution to Secured Creditor (the "March 2 Order") granting the Receiver's motion and authorizing payment to Textron of approximately $11,875,000.[29] The March 2 Order specified that the payment to Textron was made without prejudice to any objections by Mtron to Textron's claim against Farmtrac.[30]

[20]     Thereafter, Mtron filed the instant action on December 15, 2009. By way of this action, Mtron seeks relief, in its behalf and on behalf of "other general creditors of Farmtrac," against Textron, Escorts and the Receiver for equitable subordination, civil conspiracy and fraudulent conveyances.[31] In substance, Mtron asks the court to determine that the funds paid to Textron as a result of the March 2 Order should be (a) returned to the Receiver as general assets of Farmtrac and (b) made available to the general creditors of Farmtrac ahead of any claims against Farmtrac by Escorts and Textron.

---

[29] *Id.* Ex. 6.
[30] *Id.* ¶ 17.
[31] *Id.* ¶ 20.

## DISCUSSION

### Standing

[21]    As a threshold matter, Defendants Textron and Escorts argue that the court lacks subject matter jurisdiction because Mtron does not have standing to bring its Claims on behalf of itself and the general creditors of Farmtrac for harm allegedly done by Textron and Escorts.  Accordingly, both Motions seek dismissal of this action pursuant to Rule 12(b)(1).

[22]    All the elements of standing must be met prior to a court invoking its jurisdiction in adjudicating an alleged civil dispute.  *Aubin v. Susi*, 149 N.C. App. 320, 324 (2002); *see also Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 176 (2005) ("If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim.").  The burden is on the party seeking to invoke the court's jurisdiction to establish that all elements of standing have been met. *Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 92 (2005).

[23]    Rule 17(a) provides that standing is not present when a party is not a "real party in interest."  In the context of Rule 17(a), the "real party in interest" has been interpreted to mean the party who "by substantive law has the legal right to enforce the claim in question."  *Whittaker v. Furniture Factory Outlet Shops*, 145 N.C. App. 169, 175 (2001) (internal quotations omitted).  It is not enough that a party "merely" has an "interest in the action involved." *Parnell v. Nationwide Mut. Ins. Co.*, 263 N.C. 445, 448 (1965) (internal citations omitted).  Rather, to be the real party in interest, a party must have an interest in the subject matter of the litigation, such that the party is "entitled to

receive the fruits of the litigation" in the form of damages. *Goodrich v. Rice*, 75 N.C. App. 530, 537 (1985); *see Parnell*, 263 N.C. at 449.

[24]    The court may consider and weigh matters outside the pleadings when ruling on a motion to dismiss brought under Rule 12(b)(1) for lack of subject matter jurisdiction. *Tart v. Walker*, 38 N.C. App. 500, 502 (1978).

[25]    Textron contends that when the court entered the Receivership Order, the Receiver became the only party legally able to bring a claim on behalf of Farmtrac's "general creditors."[32]  In support of this argument, Textron refers to the language in the Receivership Order granting the Receiver the power to "[b]ring all actions of law or in equity which cause may require."[33]

[26]    Mtron argues that the March 2 Order allows Mtron to bring its Claims.[34] For support, Mtron cites the language in the March 2 Order that allowed the Receiver to make payment to Textron, without prejudice to Mtron's objection.[35]  Moreover, Mtron contends that the Receiver agrees with this interpretation of the March 2 Order because the Receiver answered Mtron's Complaint on March 1, 2010, by admitting paragraph 19 of the Complaint.[36]  Paragraph 19 reads:

> By virtue of the [March 2] Order and other rulings of the trial court made in open court at the hearing in the Related [Receivership] Proceeding conducted on February 18, 2009, Mtron is entitled to bring this action for itself, and for the benefit of the general creditors of the estate of receivership of Farmtrac, to obtain relief against Textron and Escorts with respect to the funds which are now in the custody of Textron pursuant to the March Order.

---

[32] Def. Textron Mem. Supp. Mot. Dismiss 9.
[33] *Id.* (citing Compl. Ex. 2.).
[34] Pl. Resp. Opp'n Def. Textron Mot. Dismiss 14.
[35] *Id.*
[36] *Id.*

[27]     A review of the case law reveals that an individual creditor ordinarily only has standing to assert its own claim when the injury alleged is separate from the estate and independent of other creditors.  *Lillian Knitting Mills Co. v. Earle*, 233 N.C. 74, 75-76 (1950) (holding that an individual creditor had standing to assert a claim against directors of a corporation that had been placed in receivership because the alleged misrepresentations were made directly to that individual creditor).  However, an individual creditor that does not have standing to bring its claim on the basis of a particularized injury may still have standing on such a claim if the receiver has either abandoned the claim or it is shown that the receiver has no motivation for bringing the claim.  *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441-42 (4th Cir. 1999).

[28]     In the instant case, the court is persuaded that Mtron has standing to bring its Claims against Defendants for the relief sought.  Mtron should not be denied such opportunity in the hope that the Receiver will pursue the Claims on behalf of Mtron.  The Receiver's admission in answering Mtron's Complaint is evidence of the fact that the Receiver either has abandoned the claims or has no motivation to bring the claims that Mtron alleges.  Dismissing Mtron's Complaint for lack of standing would be unfair in light of the facts and would result in Mtron being denied its day in court.  For these reasons, the court CONCLUDES that Mtron has standing to bring its Claims against Textron and Escorts, and that the court has subject matter jurisdiction to decide this dispute.

[29]     Therefore, the Motions, to the extent they seek dismissal pursuant to Rule 12(b)(1), should be DENIED.

[30]    The Textron Motion also seeks dismissal of each of Mtron's Claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  By bringing a motion to dismiss under Rule 12(b)(6), the moving party is able to test the legal sufficiency of a complaint.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[31]    The court, in deciding a Rule 12(b)(6) motion, should treat the well-pleaded allegations of the complaint as true and admitted, but conclusions of law or unwarranted deductions of fact are not admitted.  *Id.*  The allegations set forth in the complaint are to be treated in a light most favorable to the non-moving party*.  Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986).

[32]    A Rule 12(b)(6) motion should be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim.  *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  A party must state enough facts to satisfy the substantive elements of some legally recognized claim for relief to avoid dismissal under Rule 12(b)(6).  *Strickland v. Hedrick*, 194 N.C. App. 1, 20 (2008).

[33]    Documents that are attached to the complaint as exhibits and referenced therein will be considered by the court for Rule 12(b)(6) purposes.  *Woolard v. Davenport*, 166 N.C. App. 129, 133-34 (2004).

## Equitable Subordination

[34]    Mtron's First Claim is entitled "Subordination Due to Breaches of Fiduciary Duty and Inequitable Conduct."  Mtron contends that Textron should be estopped from

asserting the status of a secured creditor under the doctrines of unclean hands and equitable subordination, because Textron allegedly engaged in inequitable conduct and aided and abetted breaches of fiduciary duty committed by Escorts.[37] As a practical matter, Mtron is asking that the funds already paid to Textron be returned to the receivership estate of Farmtrac, and any liens upon said funds for the benefit of Escorts or Textron should be equitably subordinated to the claims of Mtron and other general creditors.[38]

[35]    Textron argues that Mtron's First Claim should be dismissed pursuant to Rule 12(b)(6) because North Carolina law does not recognize equitable subordination as a cause of action.[39]

[36]    In response, Mtron concedes that North Carolina courts have not addressed the availability of an equitable subordination claim, but argues that this cause of action should be adopted as consistent with North Carolina public policy.[40] For argument, Mtron lists only two states, Alaska and Rhode Island, that have recognized a claim for equitable subordination outside the context of bankruptcy proceedings.[41]

[37]    The court recognizes that there is no case law or statutory basis in North Carolina for equitably subordinating a claim, other than its application in the limited context of cases involving issues of admiralty and bankruptcy. In fact, one federal court dismissed an equitable subordination claim, stating that "[t]he Court has conducted an extensive review of North Carolina law and finds that this doctrine has been applied, almost exclusively, in bankruptcy proceedings . . . and admiralty matters involving ship

---

[37] Compl. ¶ 69.
[38] Compl. ¶¶ 1-4 (Prayer for Relief).
[39] Def. Textron Mem. Supp. Mot. Dismiss 10.
[40] Pl. Resp. Opp'n Def. Textron Mot. Dismiss 5-8.
[41] *Id.* 7-8.

mortgages." *Bradson Merchantile, Inc. v. Vanderbilt Indus. Contracting Corp.*, 883 F. Supp. 37, 59-60 (W.D.N.C. 1995). Since the *Bradson Merchantile* decision, the court finds no reported North Carolina case that has recognized an equitable subordination claim in a context similar to Mtron's First Claim.

[38] When a party alleges a cause of action or seeks relief not recognized by law, the court is powerless to grant relief despite the factual allegations alleged by the party. *Forrester v. Garrett*, 280 N.C. 117, 122 (1971). Based on the law and authority in other jurisdictions, the court declines to extend the law and recognize a claim for equitable subordination here. Therefore, the court CONCLUDES that Mtron's First Claim fails to state a cause of action upon which relief can be granted.

[39] Accordingly, to the extent it seeks dismissal of Mtron's First Claim pursuant to Rule 12(b)(6), Textron's Motion should be GRANTED. [42]

Fraudulent Conveyances[43]

[40] Mtron's Third Claim alleges fraudulent conveyances, presumably under the North Carolina Uniform Fraudulent Transfers Act ("NCUFTA"), pursuant to G.S. 39-23.4(a) and 39-23.5(a).[44]

[41] The NCUFTA sets forth the statutory elements that must be pleaded by a party to allege sufficiently a cause of action for fraudulent transfer. Specifically,

---

[42] Textron argues that even if equitable subordination was recognized by this court, Mtron's Complaint does not sufficiently allege the elements of an equitable subordination claim. Because the court concludes that equitable subordination is not a recognized cause of action under North Carolina law, the court need not address the substantive elements of Mtron's Claim.
[43] Although Mtron alleges fraudulent conveyances as its Third Claim, the court elects to discuss said Claim out of turn because Mtron's Second Claim (Civil Conspiracy) is derivative of the Third Claim.
[44] Mtron's Complaint does not clarify whether its fraudulent conveyances Claim is alleged under the NCUFTA. Instead, Mtron, in its response to the Textron Motion, asserts that its Third Claim satisfies the elements of a fraudulent conveyance under the NCUFTA.

G.S. 39-23.4(a) provides that a transfer is fraudulent as to present and future creditors if the debtor made the transfer:

> (1)    with intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2)    without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (a)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (b)    intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

[42]    Additionally, G.S. 39-23.5(a) sets forth additional grounds under which a transfer is fraudulent as to present creditors if:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

[43]    Mtron's Complaint sufficiently sets forth a cause of action under both applicable provisions of the NCUFTA dealing with fraudulent transfers.

[44]    Mtron alleges that Farmtrac and Escorts engaged in their "channel stuffing" scheme with the "actual intent to hinder, delay, or defraud" Mtron. It alleges that, with the assistance of both Escorts and Textron, Farmtrac was able to continue its operations and increase its credit obligations when there was no "realistic chance that Farmtrac would be able to pay its general creditors."[45] The Complaint further alleges

---

[45] Compl. ¶ 77.

that the transfers caused Farmtrac to incur "debts far beyond the ability of Farmtrac to pay as those debts became due . . .,"[46] resulting in insolvency during the time period these disputed transfers were made.[47] Mtron alleges that the transfers from Farmtrac to Textron of the fabricated accounts receivable were made without Farmtrac receiving a reasonably equivalent value from Textron because Textron knew or should have known that the funds transferred to Farmtrac in exchange for security rights on equipment and accounts receivable were being diverted from Farmtrac to Escorts and its subsidiaries.[48] Mtron alleges that these actions were done as part of the scheme to benefit Farmtrac, Escorts and Textron.

[45]     Accepting the allegations as true and in the light most favorable to Mtron, the court CONCLUDES that the Complaint alleges sufficient facts to satisfy the substantive elements of a claim for fraudulent conveyance under the NCUFTA and states a cause of action under either G.S. 39-23.4(a) or 39-23.5(a).[49]

---

[46] *Id.* ¶ 78-81.
[47] *Id.* ¶¶ 62, 64, 75, 78, 80.
[48] *Id.* ¶ 78.
[49] Mtron's allegations that Textron extended loan proceeds to Farmtrac in exchange for lien rights and interest payments, *see id.* ¶¶ 43, 50-53, 58, 65, 77-79, would ordinarily be fatal to a cause of action for fraudulent conveyance on the basis that such allegations on their face establish that Textron gave reasonably equivalent value for the transfers. However, because Mtron sufficiently alleges that Textron acted in bad faith and knew or should have known that Farmtrac was diverting to Escorts the funds received from Textron and that Textron was benefitted by such actions, *see id.* ¶¶ 50-51, 58-59, 71-73, 78-80, Mtron has alleged enough facts at this early stage in the proceedings to avoid dismissal on Rule 12(b)(6) grounds.

[46]     Accordingly, to the extent it seeks dismissal of Mtron's Third Claim pursuant to Rule 12(b)(6), Textron's Motion should be DENIED.[50]

## Civil Conspiracy

[47]     Mtron's Second Claim seeks relief based on an allegation of civil conspiracy.

[48]     To state a cause of action for civil conspiracy, it must be alleged that there was: "[a] an agreement between two or more individuals; [b] to do an unlawful act or to do a lawful act in an unlawful way; [c] resulting in injury to plaintiff inflicted by one or more of the conspirators; and [d] pursuant to a common scheme." *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, No. COA10-831, 2011 N.C. App. LEXIS 703, 14 (N.C. Ct. App. Apr. 19, 2011) (quoting *Privette v. Univ. of North Carolina*, 96 N.C. App. 124, 139 (1989)); *see also Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416 (2000) ("In order to state a claim for civil conspiracy, a complaint must allege a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury.") (citation omitted). However, because there is no independent cause of action for civil conspiracy, the tort claim for civil conspiracy must be based on some underlying wrongful, overt act. *Dove v. Harvey*, 168 N.C. App. 687, 690 (2005).  "The charge of [civil] conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one

---

[50] Mtron's Complaint seeks equitable subordination as its relief under both its fraudulent conveyance and civil conspiracy Claims.  As discussed above, equitable subordination is not a recognized cause of action or remedy under North Carolina law.  However, this is not fatal to Mtron's Third Claim.  Whether or not the proper relief has been demanded specifically by Mtron in its prayer for relief, the court concludes that it would be just and proper to permit Mtron to pursue the statutory remedies of a creditor set forth in G.S. 39-23.7 under the NCUFTA.

might be admissible against all." *Id.* (quoting *Fox v. Wilson*, 85 N.C. App. 292, 301 (1987)).

[49]     Here, Mtron alleges in its Second Claim that while Farmtrac was insolvent, Farmtrac, Escorts and Textron acted in concert to increase the amount of collateral that secured the amount owed from Farmtrac to Textron by falsifying orders and invoices when there were no bona fide buyers and diverting money from Farmtrac to Escorts and its subsidiaries.[51]  As a result of this scheme, Mtron alleges that, to its detriment, it continued to send additional equipment to Farmtrac and is now unable to recover the money it is owed by Farmtrac as a result of the alleged conspiratorial actions of Farmtrac, Escorts and Textron.

[50]     Accepting the allegations as true and in the light most favorable to Mtron, the court CONCLUDES that Mtron has alleged sufficient facts to satisfy the substantive elements of a claim for civil conspiracy.[52]  Accordingly, to the extent it seeks dismissal of Mtron's Second Claim pursuant to Rule 12(b)(6), Textron's Motion should be DENIED.

Escorts' Rule 12(e) Motion

[51]     The Escorts Motion seeks, in the alternative to its Rule 12(b)(1) standing argument, an order compelling Mtron to file a more definite statement of its Complaint, pursuant to Rule 12(e).  The Escorts Motion contends that Mtron's Complaint "is so vague, ambiguous and filled with confusing allegations, Escorts cannot reasonably prepare a responsive pleading."[53]

---

[51] Compl. ¶¶ 71-73.
[52] Whether a forecast of admissible evidence will support this Claim may be tested later pursuant to Rule 56.
[53] Def. Escorts Mot. Dismiss.

[52] A motion for a more definite statement is not favored by the courts and should not be granted if the pleading complies with the notice theory of pleading as required by Rule 8. *See Ross v. Ross*, 33 N.C. App. 447, 454 (1977). "Under the 'notice theory' of pleading a statement of claim is adequate if it gives sufficient notice of the claim asserted 'to enable the adverse party to answer and prepare for trial.'" *Sutton*, 277 N.C. at 102 (internal quotations omitted). A pleading complies with Rule 8 if the opposing party is given notice of the "transactions, occurrences, or series of transactions or occurrences intended to be proved."

[53] Mtron's Complaint satisfies the pleading requirements of Rule 8. It gives Escorts notice of the series of transactions or occurrences that Mtron intends to prove. Stated broadly, Mtron alleges that Farmtrac, Escorts and Textron together acted fraudulently and in bad faith to benefit each other to the detriment of Mtron and other general creditors of Farmtrac. Accordingly, the court CONCLUDES that Mtron's Complaint gives Escorts notice of the transaction, occurrences, or series of transactions or occurrences intended to be proven by Mtron. Escorts Motion for a more definite statement pursuant to Rule 12(e) should be DENIED.

NOW THEREFORE, based on the foregoing, it hereby is ORDERED that:

[54] The Motion of Textron Financial Corporation to Dismiss, pursuant to Rule 12(b)(1), is DENIED.

[55] With regard to Plaintiff's First Claim, the Motion of Textron Financial Corporation to Dismiss, pursuant to Rule 12(b)(6), is GRANTED; and the First Claim is DISMISSED.

[56]     With regard to Plaintiff's Second and Third Claims, the Motion of Textron Financial Corporation to Dismiss, pursuant to Rule 12(b)(6), is DENIED.

[57]     The Motion of Escorts, Ltd. to Dismiss Plaintiff's Complaint, pursuant to Rule 12(b)(1), including its alternative motion for a more definite statement, pursuant to Rule 12(e), is DENIED.

This the 22nd day of March, 2012.