Leonard v. Ast, 2022 NCBC 35.

STATE OF NORTH CAROLINA

JOHNSTON COUNTY

JACQUELINE LEONARD,

        Plaintiff,

        v.

JASON AST; KATHRYN AST; and
BARKS AND RECREATION, INC.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 3913

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS AND MOTION FOR A MORE
DEFINITE STATEMENT**

1.     This matter is before the Court on Defendants' Motions to Dismiss Under North Carolina Rules ("Rule(s)") 12(b)(1) and 12(b)(6) (together, the "Motions to Dismiss"), and their Alternative Motion for More Definite Statement Under Rule 12(e) (the "Motion for a More Definite Statement"; together with the Motions to Dismiss, the "Motions"). (ECF No. 9.)

2.     For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part, and their Motion for a More Definite Statement is DENIED.

> *Walker Kiger PLLC, by David Stevenson Walker, III, for Plaintiff Jacqueline Leonard.*
>
> *Vann Attorneys, PLLC, by Jon D. Hensarling and Ian Richardson, for Defendants Barks and Recreation, Inc., Kathryn Ast, and Jason Ast.*

Earp, Judge.

## I.     BACKGROUND

3.     With respect to a motion under Rule 12(b)(1), as well as a motion under Rule 12(b)(6), the Court "must accept as true the plaintiff's allegations and construe

them in the light most favorable to the plaintiff." *Munger v. State,* 202 N.C. App. 404, 410 (2010) ("When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) . . . if the trial court confines its evaluation to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff." (citations omitted)); *Hyde v. Abbott Labs., Inc.,* 123 N.C. App. 572, 575 (1996) ("In ruling on a motion to dismiss [pursuant to Rule 12(b)(6)], the allegations of the complaint must be treated as true." (citing *Stanback v. Stanback,* 297 N.C. 181, 185 (1979))). Therefore, the following facts, taken from Plaintiff's Complaint, (ECF No. 3), are accepted as true for purposes of deciding the Motions to Dismiss. The Court does not make findings of fact, as the Motions to Dismiss do "not present the merits, but only [determine] whether the merits may be reached." *Concrete Serv. Corp. v. Invs. Grp., Inc.,* 79 N.C. App. 678, 681 (1986).

4.     Plaintiff Jaqueline Leonard ("Plaintiff") is a citizen and resident of Johnston County, North Carolina. (Compl. ¶ 1.)

5.     Defendants Jason Ast ("Jason") and his wife, Kathryn Ast ("Kathryn"; together with Jason, the "Asts"), are also citizens and residents of Johnston County, North Carolina. (Compl. ¶ 2.)

6.     Defendant Barks and Recreation, Inc. ("Barks and Recreation," or the "Company"; together with the Asts, "Defendants") is a North Carolina corporation, with its principal office in Johnston County, North Carolina. (Compl. ¶ 3.)

7.     Plaintiff and Kathryn were friends, and for four years, Plaintiff worked—both as a paid employee and as a volunteer—for "Just Dog People", a dog grooming business the Asts owned.  (Compl. ¶¶ 6–8.)

8.     In 2020, Jason approached Plaintiff with the idea of starting a dog-training business called Barks and Recreation.  (Compl. ¶ 9.)  Jason told Plaintiff that the "three would run the business together."  The Asts were to contribute the business expertise, and Plaintiff was to contribute the capital.  (Compl. ¶ 13.)

9.     The Asts believed that Barks and Recreation "would increase the traffic to Just Dog People because the businesses would be neighboring."  (Compl. ¶ 14.)

10.    Articles of incorporation for Barks and Recreation were filed by the North Carolina Secretary of State on 30 March 2020.  (Compl. ¶ 15.)

11.    On 18 June 2020, Plaintiff withdrew $50,000 from her retirement account, and she withdrew an additional $50,000 a week later.  The money was deposited into the Barks and Recreation account.  (Compl. ¶¶ 16–17.)  The Asts did not contribute any capital to the business.  (Compl. ¶ 18.)

12.    Barks and Recreation largely ignored corporate formalities.  There was never an initial corporate meeting, bylaws were never adopted, and shares were never issued. (Compl. ¶¶ 19–21.)  The Asts made every decision for the business and rarely consulted Plaintiff.  (Compl. ¶ 22.)

13.    The relationship between Plaintiff and Jason eventually "soured." (Compl. ¶ 23.)  Nevertheless, Plaintiff continued working daily for Barks and Recreation until 27 April 2021, when Jason told Plaintiff to "immediately leave the

premises and never return," and that he "could never work with her again." (Compl. ¶¶ 25–26.)

14. Jason also asked Plaintiff "how much it would cost to buy her out of the business," but rejected the number she gave him. (Compl. ¶ 27.)

15. Jason removed Plaintiff from the corporate email, the phone system, "and other necessities of the business." He disabled the CPI Security System cameras as well. (Compl. ¶ 28.)

16. Together the Asts called a special shareholders meeting for 7 October 2021 to consider dissolution of Barks and Recreation. Plaintiff objected to the meeting because "shares [had] never . . . been issued and bylaws ha[d] never been adopted." In response to her objection, the Asts stated that they collectively owned two-thirds of the shares of Barks and Recreation, and they proceeded with the meeting. (Compl. ¶¶ 29–30.)

17. At the meeting, the Asts voted to dissolve Barks and Recreation. (Compl. ¶ 31.)

18. On 28 October 2021, articles of dissolution for Barks and Recreation were filed. (Compl. ¶ 32.)

19. Plaintiff brought this suit by filing a verified complaint on 5 November 2021, asserting claims for (1) Breach of Fiduciary Duty (against the Asts only), (2) a "Request that Barks and Recreation, Inc Be Declared a Partnership", (3) Unjust Enrichment (against the Asts only), and (4) Unfair or Deceptive Trade Practices in

violation of Chapter 75 of the North Carolina General Statutes (against the Asts only). (ECF No. 3.)

20. On 23 March 2022, Plaintiff voluntarily dismissed her Chapter 75 claim without prejudice. (ECF No. 12.)

21. All three Defendants now move to dismiss the remaining claims. The Motions have been fully briefed, and the Court held a hearing on the Motions on 20 June 2022. (*See* ECF No. 16.) All parties were present and heard. The Motions are ripe for disposition.

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

22. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCBC Nat'l Bank,* 85 N.C. App. 669, 670 (1987).

23. The Court must construe the complaint liberally and accept all well-pleaded allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577 (2009). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.,* 174 N.C. App. 266, 274 (2005) (citation omitted).

24.     "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. British Am. Tobacco PLC,* 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.,* 355 N.C. 161, 166 (2002)).

B.     Motion to Dismiss Pursuant to Rule 12(b)(1)

25.     Defendants assert an additional basis for dismissal of the breach of fiduciary duty claim.  Defendants contend that the claim is derivative, not direct, and they observe that Plaintiff failed to make the statutorily required demand before filing suit.  *See* N.C.G.S. § 55-7-42.  They contend, therefore, that Plaintiff lacks standing to bring this derivative claim, and that the Court lacks subject matter jurisdiction to determine it.

26.     "Standing refers to whether a party has sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter."  *Am. Woodland Indus., Inc. v. Tolson,* 155 N.C. App. 624, 626 (2002).  "Standing is a question of subject matter jurisdiction, which is a prerequisite to the exercise of any authority by the state courts."  *Phillips & Jordan*, 2012 NCBC LEXIS 36, at *7 (citing *Str. v. Smart Corp.*, 157 N.C. App. 303, 305 (2003) and *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113 (2002)).

27.     "As a general rule regarding derivative suits, 'a demand that the directors act is a prerequisite to a shareholder suing upon behalf of the corporation.'"

*Norman v. Nash Johnson & Sons' Farms, Inc.,* 140 N.C. App. 390, 408 (2000) (quoting *Roney v. Joyner*, 86 N.C. App. 81, 83 (1987)); *see also Petty v. Morris*, 2014 NCBC LEXIS 67, at *4 (N.C. Super. Ct. Dec. 16, 2014) (stating that a party must strictly comply with the demand requirement to have standing to bring a derivative action on behalf of corporations).

28.    The burden is on Plaintiff to prove the existence of subject matter jurisdiction.  Absent that proof, the Court is required to dismiss the action.  *See Sarda v. City/Cnty. of Durham Board of Adjustment,* 156 N.C. App. 213, 215 (2003) ("If a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, it must dismiss the case for want of jurisdiction." (citation omitted)); N.C. R. Civ. P. 12(h)(3).

## III.    ANALYSIS

### A.    Breach of Fiduciary Duty

29.    Defendants contend that Plaintiff has improperly attempted to bring a direct claim for breach of fiduciary duty, and that her failure to make the pre-litigation demand required by statute means she does not have standing to bring the claim derivatively either.  (Defs.' Mem. Supp. Mots. Dismiss 7, ECF No. 10.)

30.    "It is a well-settled principle of North Carolina law that shareholders of a corporation cannot pursue individual causes of action for wrongs or injuries to the corporation." *Miller v. Burlington Chem. Co., LLC*, 2017 NCBC LEXIS 6, at *13 (N.C. Super. Ct. Jan. 27, 2017) (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658 (1997)).  However, Plaintiff argues that she is asserting a claim for a wrong inflicted

on her specifically, the minority shareholder, by the majority shareholders, and not a wrong done to the corporation.

31. The law permits a shareholder to bring a direct claim: "(1) when there is a special duty between the wrongdoer and the shareholder; and (2) when the shareholder suffered an injury separate and distinct from the injury suffered by the corporation and the other shareholders." *Id.* In order to establish a special duty, the plaintiff must allege facts "showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and separate and distinct from the duty defendants owed the corporation." *Barger,* 346 N.C. at 659.

32. Plaintiff argues that she was owed a special duty by the Asts because she was a minority shareholder of the closely held corporation they controlled. (Pl.'s Mem. Opp'n Defs.' Mots. Dismiss 4, ECF No. 11; Compl. ¶ 35–39.) She has alleged that the Asts together "purported" to own two-thirds of the shares in Barks and Recreation, and that the Asts acted in concert to make all major decisions for the business, including the decision to dissolve it. Consequently, she contends that the Asts, as the majority interest holders, owed her direct fiduciary duties.

33. "North Carolina courts ha[ve] recognized that individual minority shareholders of a closely-held corporation who act in concert and collectively own the majority interest in the corporation may owe fiduciary duties as the controlling shareholders." *Zagaroli v. Neill,* 2018 NCBC LEXIS 25, at *26 (N.C. Super. Ct. Mar. 28, 2018) (citing *Norman,* 140 N.C. App. at 407); *see also Gaines v. Long Mfg. Co.,* 234 N.C. 340, 344–45 (1951); *Flynn v. Pierce,* 2020 NCBC LEXIS 149, at *9–11 (N.C.

Super. Ct. Dec. 22, 2020). And, under these circumstances, the minority shareholder may bring a direct claim for breach of those duties against the controlling shareholder(s), in addition to or instead of a derivative claim. *See Norman*, 140 N.C. App. at 405 ("[M]inority shareholders in a closely held corporation who allege wrongful conduct and corruption against the majority shareholders in the corporation may bring an individual action against those shareholders, in addition to maintaining a derivative action on behalf of the corporation."); *see also, e.g., Maurer v. Maurer,* 2013 NCBC LEXIS 41, at *10 (N.C. Super. Ct. Aug. 23, 2013) ("North Carolina appellate courts have recognized that a fiduciary duty is owed by a controlling shareholder to a minority shareholder in particular circumstances, and have allowed an individual claim for breach of that duty to proceed even if a derivative action would otherwise be appropriate."). Based on the foregoing, the Court concludes that Plaintiff has standing to bring a direct claim for breach of fiduciary duty against the Asts and therefore DENIES the Motion to Dismiss pursuant to Rule 12(b)(1).

34. However, Defendants also argue that even if she has standing, Plaintiff has failed to state a claim for breach of fiduciary duty under Rule 12(b)(6). (Defs.' Mem. Supp. Mots. Dismiss 7–11.)

35. A claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of that duty; and (3) damages resulting from the breach. *See Keener Lumber Co. v. Perry,* 149 N.C. App. 19, 28 (2002) ("Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty."). Plaintiff has alleged that (1) the Asts, acting in concert as majority shareholders,

owed fiduciary duties to Plaintiff, the minority shareholder; (2) the Asts breached their fiduciary duties to Plaintiff by making business decisions—including the decision to dissolve the corporation—without her input, calling special shareholder meetings over her objections, and by Jason Ast informing her that she had to leave the premises and then denying her access to the corporate email, phone system, and security cameras; and (3) Plaintiff has been deprived of her ownership interests and rights as a result of the Asts' actions.

36. Defendants argue that Plaintiff's allegations of breach do not rise to the level of a legally cognizable injury. They cite *Chisum v. Campagna*, 376 N.C. 680 (2021), in support of this argument. However, unlike the case before the Court, *Chisum* arose in the context of a limited liability company controlled by an operating agreement. The Supreme Court held that in those circumstances, allegations that (1) the controlling members attempted to "freeze" a minority member out of an LLC, (2) the controlling members "conducted 'sham capital calls,' " and (3) the controlling members "acted as if [plaintiff] was no longer a member of the LLC, and treated him in a manner that was inconsistent with his status as a member" did not amount to a legally cognizable injury separate and distinct from the injury suffered by the LLC. *Chisum*, 376 N.C. at 724. Here, however, Plaintiff was not a party to an operating agreement, and the fiduciary relationship she has with the majority interest holders gives rise to a special duty that runs directly to her. *See, e.g.*, *Meiselman v. Meiselman,* 309 N.C. 279, 289, 316 (1983) (explaining that minority shareholders often lack bargaining power and holding that if "plaintiff's condition is a result of

oppression or bad conduct by the other shareholders[,]" the oppression may support a claim for breach of fiduciary duty).

37. To be sure, Plaintiff alleges that Jason alone was responsible for some of the conduct she finds objectionable. But Plaintiff also alleges that the Asts "made every decision for the business," (Compl. ¶ 22), and that they called the shareholders' meeting, proceeded to meet despite Plaintiff's objection, and voted to dissolve the business, (Compl. ¶¶ 29–31). It remains to be determined whether these actions constitute a breach of their fiduciary duties to Plaintiff.

38. Therefore, although the allegations in the Complaint are thin, the Court finds them minimally sufficient at this stage of the case to survive the Motions. Accordingly, the Asts' Motions to Dismiss Plaintiff's first claim for breach of fiduciary duty are DENIED.

B. Declaratory Judgment that Entity is a Partnership

39. Defendants move to dismiss Plaintiff's second claim for relief, through which she requests a declaration from the Court that Barks and Recreation is a partnership rather than a corporation, because the Complaint on its face establishes that both articles of incorporation and articles of dissolution for the business have been filed with the North Carolina Secretary of State. (Compl. ¶¶ 15, 32; Defs.' Mem. Supp. Mots. Dismiss 13–14.)

40. The North Carolina Business Corporation Act (the "Act") states that "[c]orporate existence begins when the articles of incorporation become effective[,]" and that "[t]he Secretary of State's filing of the articles of incorporation is conclusive

proof that the incorporators satisfied all conditions precedent to incorporation[.]" N.C.G.S. § 55-2-03(a)–(b).

41.     Plaintiff concedes that all conditions precedent to incorporation were satisfied when the Secretary of State filed the articles of incorporation for Barks and Recreation but argues that "[the filing] is not conclusive proof that the Corporation was perfected and should be treated as a [c]orporation[.]" (Pl.'s Mem. Opp'n Defs.' Mots. Dismiss 8.)  Because corporate formalities such as adopting bylaws and issuing shares were ignored by the corporation, Plaintiff argues that Barks and Recreation should be treated as a partnership. (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 9.)

42.     However, failure to adopt bylaws or issue shares, while problematic in other ways, does not convert a corporation to a partnership.  *See, e.g., Atl. Tobacco Co. v. Honeycutt,* 101 N.C. App. 160, 164–165 (1990) (a court considers four factors when choosing to disregard the corporate form, one of which is "non-compliance with corporate formalities[,]" but no factor by itself is determinative).

43.     Furthermore, contrary to Plaintiff's argument, a corporation is not required to issue shares in order to dissolve.  The Act specifically provides that "a majority of the incorporators of a corporation *that has not issued shares* may dissolve the corporation by . . . filing articles of dissolution." N.C.G.S. § 55-14-01(a) (emphasis added).  Here, the Court takes judicial notice that the incorporator was Kathryn Ast. Jason Ast executed the articles of dissolution on behalf of Kathryn Ast and himself.[1] Consequently, the requirements of this statute were satisfied.

---

[1] This information is found in the Company's Articles of Incorporation and Articles of Dissolution filed with the North Carolina Secretary of State. *See North Carolina Secretary of*

44.     Because Plaintiff's own allegations defeat this claim for relief, Defendants' Motion to Dismiss Plaintiff's second claim for relief is GRANTED.

C.      Unjust Enrichment

45.     The Asts contend that Plaintiff's claim against them for unjust enrichment also fails as a matter of law because it is summarily pleaded.  They argue that Plaintiff has not adequately alleged which of them has personally benefitted from her capital contribution of $100,000 to the Company and how. (Defs.' Mem. Supp. Mots. Dismiss 15.)

46.     "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefore." *Chisum v. Campagna,* 2017 NCBC LEXIS 102, at *31 (N.C. Super. Ct. Nov. 7, 2017) (quoting *Atl. C. L. R. Co. v. State Highway Comm'n,* 268 N.C. 92, 95–96 (1966)). "The doctrine . . . was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Id.* at *32 (quoting *Collins v. Davis,* 68 N.C. App. 588, 591 (1984)).

47.     Plaintiff argues that her capital contribution of $100,000 to Barks and Recreation conferred a benefit on the Asts because it allowed them to start a business with only "sweat equity" and no personal financial investment.  She alleges that the Asts believed that the new business might increase the traffic to their neighboring

*State,* https://www.sosnc.gov/online_services/search/Business_Registration_Results (last visited July 12, 2022).

dog grooming business. She further alleges that "if" the Asts were to receive any assets resulting from the Company's dissolution, "they would be unjustly enriched." (Compl. ¶¶ 14, 55, 60; Pl.'s Mem. Opp'n Defs.' Mots. Dismiss 10.)

48. But alleging only that the Asts might benefit from the business venture does not state a claim for unjust enrichment. *Cf. KNC Techs., LLC v. Tutton*, 2019 NCBC LEXIS 72, *36 (N.C. Super. Ct. Oct. 9, 2019) ("Alleging merely that the Defendants have taken for themselves some benefit to which Plaintiff believes [she] is rightfully entitled does not state a claim for unjust enrichment.").[2] Instead, "[a] claim for unjust enrichment must be based on a contract implied in law in which one party has provided a benefit to another, such as goods or services, for which the first party should be rightfully compensated." *Id.*

49. Here, Plaintiff alleges that she contributed capital to the Company. She does not allege that any part of her capital contribution was a loan for which she expected repayment from the Asts. And, although the parties speculated that establishing the new business might assist the existing business, that speculation does not amount to an allegation that Plaintiff has conferred a benefit on the Asts for which she should be compensated. Likewise, Plaintiff's worry that "if the Asts received assets in the dissolution, they would be unjustly enriched" is not an allegation of fact upon which a claim of unjust enrichment can rest.

---

[2] This Court has observed that allegations of this nature "reflect a continuing and widespread misunderstanding of the facts necessary to support a claim for unjust enrichment" among members of the Bar. *KNC Techs., LLC,* 2019 NCBC LEXIS 72, at *35.

50.     Accordingly, Plaintiff has failed to allege facts to support a claim for unjust enrichment and Defendants' Motions to Dismiss the claim should be GRANTED.

D.     Motion for More Definite Statement Pursuant to Rule 12(e)

51.     In ruling on a motion for a more definite statement under Rule 12(e), the Court considers whether "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]" N.C. R. Civ. P. 12(e). Motions for a more definite statement "[are] not favored by the courts and [are] sparingly granted because pleadings may be brief and lacking in factual detail, and because of the extensive discovery devices available to the movant." *Ross v. Ross,* 33 N.C. App. 447, 454 (1977); *see Redevelopment Comm'n of Washington v. Grimes,* 277 N.C. 634, 645 (1971) (stating that a motion to dismiss addresses vagueness or lack of detail in a pleading). "[T]he grant or denial of a motion for a more definite statement rests in the sound discretion of the trial judge, and [her] ruling thereon will not be overturned on appeal absent a showing of abuse of discretion." *Ross*, 33 N.C. App. at 454 (citation omitted).

52.     "If the contested pleading meets the standards of North Carolina Rule of Civil Procedure 8 and the opposing party is adequately notified of the nature of the claim, a motion for a more definite statement should be denied." *Willard v. Barger,* 2019 NCBC LEXIS 31, at *3 (N.C. Super. Ct. May 14, 2019) (citing *Ross*, 33 N.C. App. at 454–55; *Gatlin v. Bray,* 81 N.C. App. 639, 644 (1986) ("Pleadings comply with our present concept of notice pleading if the allegations in the [pleading] give [the

opposing party] sufficient notice of the nature and basis of [the] claim to file an answer, and the face of the complaint shows no insurmountable bar to recovery.")). "Because motions for a more definite statement are 'the most purely dilatory of all the motions available under the Rules of Civil Procedure,' our appellate courts have instructed that they 'should be scrutinized with care[.]'" *Id.* at *4 (quoting *Ross,* 33 N.C. App. at 454; *Johnson v. Bollinger,* 86 N.C. App. 1., 12 (1987)).

53.     Defendants argue that Plaintiff has failed to plead: (1) "sufficient facts to allege the existence of a fiduciary relationship between the minority shareholders of [Barks and Recreation]"; (2) "facts sufficient to allege control of [Barks and Recreation] by the Asts"; (3) a claim under the North Carolina Declaratory Judgments Act or a cognizable claim asking the Court to recognize [Barks and Recreation] as a partnership"; (4) "how the Asts were allegedly unjustly enriched"; and (5) "any facts describing harm or damages she has allegedly suffered."  (Defs.' Mem. Supp. Mots. Dismiss 19.)   Plaintiff argues that the Complaint provides Defendants with enough information to admit or deny the factual claims made in the Complaint.  (Pl.'s Mem. Opp'n Defs.' Mots. Dismiss 10–11.)

E.     The Court has reviewed the Complaint and concludes that "a request for additional details is more properly the subject of discovery." *Burgess v. Am. Express Co.,* 2007 NCBC LEXIS 15, at *3 (N.C. Super. Ct. May 21, 2007). Accordingly, the Court, in its discretion, DENIES Defendants' Motion pursuant to Rule 12(e).

F.     <u>Chapter 75 Claim</u>

54. Finally, first recognizing that Plaintiff has voluntarily dismissed *without prejudice* her claim for violations of the North Carolina Unfair and Deceptive Trade Practices Act, Defendants urge the Court to dismiss the claim *with prejudice*. But the Court's jurisdiction with respect to the claim ends when a dismissal is taken pursuant to Rule 41(a)(1), unless and until a new action is timely commenced. *BB&T Boli Plan Trust v. Massachusetts Mut. Life Ins. Co.,* 2016 NCBC LEXIS 36, at \*12 (N.C. Super. Ct. April 29, 2016) ("The general rule is that once a plaintiff takes a Rule 41(a)(1) dismissal, there is nothing the defendant can do to fan the ashes of that action into life[,] and the court has no role to play." (citations and internal quotation marks omitted)). Therefore, Defendants' Motion as to the dismissed Chapter 75 claim is DENIED.

## IV. CONCLUSION

G. WHEREFORE, the Court hereby ORDERS as follows:

a. As to Plaintiff's First Claim for Breach of Fiduciary Duty by the Asts, the Motions are DENIED.

b. As to Plaintiff's Second Claim for Request that Barks and Recreation be Declared a Partnership, the Motion to Dismiss under Rule 12(b)(6) is GRANTED, and this claim is DISMISSED with prejudice.

c. As to Plaintiff's Third Claim for Unjust Enrichment against the Asts, the Motion to Dismiss under Rule 12(b)(6) is GRANTED, and this claim is DISMISSED without prejudice.[3]

d. As to Plaintiff's Fourth Claim for Unfair or Deceptive Trade Practices, which has been voluntarily dismissed pursuant to Rule 41(a)(1), Defendants' Motion to Dismiss under Rule 12(b)(6) is DENIED.

e. Defendants' Alternative Motion for More Definite Statement Under Rule 12(e) is DENIED.

IT IS SO ORDERED, this the 13th day of July, 2022.


/s/ Julianna Theall Earp
_____
Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases

---

[3] "The decision to dismiss an action [pursuant to Rule 12(b)(6)] with or without prejudice is in the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *First Fed. Bank v. Aldridge,* 230 N.C. App. 187, 191 (2013) (citation omitted).